JOHN BONHAM and CHARLYNN          )
BONHAM, on behalf of themselves   )
and other similarly situated,     )
                                  )
          Plaintiffs,             )
                                  )
Vs.                               )          MEMORANDUM AND
                                  )          RECOMMENDATION
WOLF CREEK ACADEMY; ABOUT         )
FACE MINISTRIES; PATRICIA A.      )
JONES; JAMES E. JONES; and        )
JEREMY C. JONES,                  )
                                  )
          Defendants.             )
_____   )

**THIS MATTER** is before the court on defendants' Partial Motion to Dismiss. In such motion, defendants seek dismissal of all eleven supplemental claims asserted by plaintiff, as well as the demand for punitive damages. Defendants do not seek dismissal of plaintiffs' claim under the Fair Labor Standards Act (hereinafter "FLSA"), 29 U.S.C. § 207. Plaintiffs filed their timely Response to Defendants' Partial motion to Dismiss (#17) on November 24, 2010, and defendants timely filed their timely Reply Brief in Support of Defendants' Partial Motion to Dismiss (#18) on December 6, 2010. Having considered defendants' motion and brief, the Complaint, and the briefs in response and reply, the undersigned enters the following findings, conclusions, and recommendation that the Partial Motion to Dismiss be allowed.

# FINDINGS AND CONCLUSIONS

## I.    Background

Primarily, this action concerns allegedly unpaid wages which plaintiffs contend they earned at a boarding school for troubled teens located in Madison County, North Carolina, run by defendants. Complaint (hereinafter "Compl."), at ¶¶ 1 & 11. In particular, plaintiffs contend that defendants failed to pay them and other persons similarly situated overtime pay for their work as house parents. Id., at ¶¶ 1, 3, & 81.

In addition to such federal claim, plaintiffs have also asserted 11 additional claims under North Carolina law. As will be discussed, many of these claims are based on the FLSA claim and all of plaintiffs' supplemental claims concern their 18 months working as house parents at defendants' boarding school for troubled teens. Plaintiffs' supplemental claims are:

(1)    Second Cause of Action: North Carolina Wage and Hour Act, N.C.Gen.Stat. § 95-25.4;

(2)    Third Cause of Action: Breach of Fiduciary Duty;

(3)    Fourth Cause of Action: Constructive Fraud;

(4)    Fifth Cause of Action: Conversion;

(5)    Sixth Cause of Action: Fraud;

(6)    Seventh Cause of Action: Negligent Misrepresentation;

(7)    Eighth Cause of Action: Negligence;

(8)    Ninth Cause of Action: Piercing the Corporate Veil;

(9)    Tenth Cause of Action: Intentional Infliction of Emotional Distress;

(10)    Eleventh Cause of Action: Negligent Infliction of Emotional Distress; and

(11)    Twelfth Cause of Action: Unfair and Deceptive Trade Practices.

Plaintiffs have also included a demand for punitive damages under North Carolina law.  Compl., ¶¶ 142-144, .

In their Motion to Dismiss, defendants contend that all supplemental claims as well as the demand for punitive damages should be dismissed in accordance with Rule 12(b)(6), Federal Rules of Civil Procedure, arguing that plaintiffs have failed to state claims upon which relief can be granted.

## II.    Rule 12(b)(6): Applicable Standard

Until recently, a complaint could not be dismissed under Rule 12(b)(6) unless it appeared certain that plaintiff could prove no set of facts which would support its claim and entitle it to relief. Neitzke v. Williams, 490 U.S. 319 (1989);  Conley v. Gibson, 355 U.S. 41 (1957).  This "no set of facts" standard has been specifically abrogated by the Supreme Court in recent decisions.

First, in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Court held that  the "no set of facts" standard first espoused in Conley, supra, only describes the "breadth of opportunity to prove what an adequate complaint claims, not the minimum adequate pleading to govern a complaint's survival."    Id., at 563.   The Court specifically rejected use of the "no set of facts" standard because such standard would improperly allow a "wholly conclusory statement of claim" to "survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later

establish some 'set of [undisclosed] facts' to support recovery." Id., at 561 (alteration in original).

Post Twombley, to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts in the complaint that "raise a right to relief above the speculative level." Id., at 555.

> [A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . .

Id. (second alteration in original; citation omitted). Further, a complaint will not survive Rule 12(b)(6) review where it contains "naked assertion[s] devoid of further factual enhancement." Id., at 557. Instead, a plaintiff must now plead sufficient facts to state a claim for relief that is "*plausible* on its face." Id., at 570 (emphasis added).

While the Court was clear in Twombly that Conley was no longer controlling, see Twombly, 550 U.S. at 563, and Felman Production Inc. v. Bannai, 2007 WL 3244638, at *4 (S.D.W.Va. 2007), it again visited the Rule 12(b)(6) pleading standard in Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937 (May 18, 2009). In Ashcroft, the Court determined that Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Id., S.Ct., at 1949. The Court explained that, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" Id. (citing Twombly, supra; emphasis added). What is plausible is defined by the Court:

> [a] claim has facial plausibility when the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Id. This "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully." Id. Thus, a complaint falls short of the plausibility standard where a plaintiff pleads "facts that are 'merely consistent with' a defendant's liability . . . ." Id. While the court accepts plausible factual allegations made in a complaint as true and considers those facts in the light most favorable to a plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP, 213 F. 3d 175, 180 (4th Cir. 2000).

In sum, when ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*) (citations omitted). A complaint "need only give the defendant fair notice of what the claim is and the grounds upon which it rests." Id., at 93 (alteration and internal quotation marks omitted). However, to survive a motion to dismiss, the complaint must "state[ ] a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950. While a plaintiff is not required to plead facts that constitute a *prima facie* case in order to survive a motion to dismiss, see Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510-15 (2002), "[f]actual allegations must be enough to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555.


III.    Discussion

**A.  Second Cause of Action: a claim under the overtime provision of the North Carolina Wage and Hour Act, N.C.Gen.Stat. § 95-25.4**

In plaintiffs' Second Cause of Action, they assert a claim for unpaid overtime wages under the North Carolina Wage and Hour Act (hereinafter "the NCWHA"). Plaintiffs have, however, asserted in their First Cause of Action a claim under the FLSA for unpaid overtime. [1] As a matter of state law, the NCWHA has by the language of the statute no application where the FLSA governs the employer-employee relationship. See N.C.Gen.Stat. § 95-25.14; Spencer v. Hyde County, 959 F.Supp. 721, 727 (E.D.N.C. 1997).

Plaintiffs argue in response that this court cannot dismiss their NCWHA claim until this court "definitely determines whether the FLSA controls." Response, at p. 3. Defendants admit that Wolf Creek Academy, which plaintiffs contends was their employer, is an enterprise under 29 U.S.C. § 203(s)(1)(B), and stipulate that "the FLSA is the appropriate claim for overtime wages . . . ."[2] Reply, at p. 1.

Thus, it appears clear to the court that any claim plaintiffs may have for unpaid overtime will be governed by the FLSA as defendants admit that Wolf Creek Academy is an enterprise under Title 29, and it appears from the allegations of the Complaint that such defendant fits squarely into the definition provided by Section 203(s)(1)(B). The FLSA defines an "enterprise engaged in commerce or in the production of goods for commerce," in part, as an enterprise that

---

[1]      Inasmuch as the FLSA provides for jurisdiction in either state or federal court, plaintiffs could have brought this action in state court.

[2]      Defendants deny liability and reserve the right to assert any exemptions under the FLSA.  Reply, at p. 1.

is engaged in the operation of ... an institution primarily engaged in the care of the sick, the aged, or the mentally ill or defective who reside on the premises of such institution ....

29 U.S.C. § 203(s)(1)(B). The undersigned will, therefore, recommend that plaintiffs' Second Cause of Action be dismissed as the FLSA governs plaintiffs' claim for unpaid overtime wages.

### B. Third and Fourth Causes of Action: Breach of Fiduciary Duty and Constructive Fraud

In both the third and fourth causes of action, plaintiffs contend that defendants breached their fiduciary duty and committed constructive fraud when they mis-characterized their wages and employment status as that of "independent contractors.' Compl., at ¶¶ 91 & 95. Defendants contend that "obstacle preemption" under the FLSA bars these claims and that plaintiffs have not otherwise alleged sufficient plausible facts that would support such claims.

The inquiry as to whether the FLSA preempts plaintiffs' state law claims begins with whether plaintiffs' state-law claims are FLSA based, and if they are, whether they "stand[] as an obstacle to the accomplishment of the full purposes and objectives of the FLSA." Anderson v. Sarah Lee Corp., 508 F.3d 18, 193 (4th Cir. 2007)(citation and corresponding quotation marks omitted; brackets in the original).

First, the undersigned has considered whether plaintiffs' third and fourth causes of action are FLSA based. In each claim, plaintiffs reincorporate all previous paragraphs of the Complaint, which include the factual and legal allegations supporting their FLSA claim and the FLSA claim itself. Compl., at ¶¶ 88 & 93. Further, in each claim plaintiffs allege that the state-law tort is based on a breach of

defendants' fiduciary duty to accurately characterize their "wages and employment status." Id., at ¶¶ 90, 91, & 95. The Court of Appeals in Anderson held as follows:

> they [the class members] rely on the FLSA for their rights, and they invoke state law only as the source of remedies for the alleged FLSA violations. Importantly, the FLSA does not explicitly authorize states to create alternative remedies for FLSA violations. And, in view of the FLSA's unusually elaborate enforcement scheme, there cannot be the exceptionally strong presumption against preemption of such state remedies that would be warranted if the FLSA did not provide federal remedies. *See Abbot*, 844 F.2d at 1112. Nevertheless, in assessing whether the FLSA enforcement scheme preempts state remedies for FLSA violations, we must heed the Supreme Court's admonishment that "the mere existence of a federal regulatory or enforcement scheme"-even if the scheme is an appreciably detailed one-"does not by itself imply preemption of state remedies." *English v. Gen. Elec. Co.*, 496 U.S. 72, 87, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990). And we must look for " 'special features warranting preemption,' " *id.* (*quoting Hillsborough*, 471 U.S. at 719, 105 S.Ct. 2371), such as the provision of exclusive remedies for enforcing rights expressly guaranteed by the federal statute, *see Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 144, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990).

Anderson v. Sarah Lee Corp., 508 F.3d at 193-194. The court further stated that "we must hold today that Congress prescribed exclusive remedies in the FLSA for violations of its mandates." Id., at 194.

> Because the FLSA's enforcement scheme is an exclusive one, we further conclude that the Class Members' FLSA-based contract, negligence, and fraud claims are precluded under a theory of obstacle preemption. Our conclusion is consistent with the rulings of several district courts deeming state claims to be preempted by the FLSA where those claims have merely duplicated FLSA claims.

Id. In light of the decision in Anderson, plaintiffs' third and fourth causes are preempted as they are clearly dependent on and even incorporate their claims under the FLSA. Finding plaintiffs claims for breach of fiduciary duty and constructive fraud to be duplicative of the FLSA claim, the undersigned must recommend that the

third and fourth causes of action be dismissed based on obstacle preemption under the FLSA.

Inasmuch as these claims are clearly preempted, the undersigned will not discuss at length the alternative basis for dismissal under Rule 12(b)(6). It is, however, clear that plaintiffs' allegation that a fiduciary relationship existed between them and their employer is a legal conclusion that is unsupported by factual allegations from which one could plausibly conclude that a fiduciary relationship existed. Further, even the legal conclusion that a fiduciary relationship sprang from an employer-employee relationship finds no support in North Carolina law as "the relation of employer and employee is not one of those regarded as confidential." Dalton v. Camp, 353 N.C. 647, 651 (2001). A fiduciary relationship must exist between the parties before a claim can arise for breach of that fiduciary duty. White v. Consol. Planning, Inc., 166 N.C.App. 283, 293 (2004), disc. review denied, 359 N.C. 286 (2005). A fiduciary relationship arises only when plaintiffs place special confidence in another person, to the extent that the party in whom such special confidence is placed is bound to act in the best interests of the party placing the confidence. Dalton v. Camp, 353 N.C. at 651. An essential element of the fiduciary relationship is that the purported fiduciary exercised influence over the plaintiffs by virtue of the trust placed in such alleged fiduciary. Id., at 652. North Carolina law imposes no such duty on an employer. Thus, defendants would also be entitled to dismissal of the claim for breach of fiduciary duty under Rule 12(b)(6).

The failure to allege an extant fiduciary relationship is also fatal to plaintiff's claim of constructive fraud. "To assert a claim of constructive fraud, plaintiff must allege:(1) a relationship of trust and confidence, (2) that the defendant took advantage of that position of trust in order to benefit himself, and (3) that plaintiff was, as a result, injured." Clay v. Monroe, 189 N.C.App. 482, 488 (2008)(citation omitted and corresponding quotation marks deleted). There being no fiduciary duty between these parties, plaintiffs have failed to state a claim for constructive fraud.

The undersigned will, therefore, recommend dismissal of these claims under obstacle preemption and, in the alternative, for failure to state cognizable claims under Rule 12(b)(6) as a matter of state law.[3]

## C.    Fifth Cause of Action: Conversion

Defendants next argue that because plaintiffs' claim for conversion is based on an allegation that defendants failed to accurately characterize and report their wages and employment status to the IRS, such claim is barred by Section 7422(a) of the Internal Revenue Code.  26 U.S.C. § 7422(a).  Section 7422(a) of the tax code provides as follows:

> **(a) No suit prior to filing claim for refund**
> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally

---

[3]    The court notes that in their Response, plaintiffs concede that these claims are preempted "by federal tax law" and that they "reluctantly concede[] that 26 U.S.C. § 7422 appears to preempt these state claims...."  Response, at pp. 3-4.  Section 7422(a) bars suit for employment taxes erroneously paid or collected until a claim has been filed with the IRS. Defendants only raise Section 7422 as a bar to plaintiffs' fifth cause of action, but not as a bar to the third and fourth causes of action.  While plaintiffs have intended to concede obstacle preemption, such conclusion cannot be clearly drawn from their response, only that they did not contest obstacle preemption.

assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

Id. While the Court of Appeals for the Fourth Circuit has yet to take up the issue, it appears that other circuits have held that a claim by an employee against an employer for mis-classification of an employee as an independent contractor, which results in the employee being responsible for FICA taxes, whether brought under state law or FICA, is not cognizable and that the taxpayer's exclusive remedy is found under Section 7422. Umland v. PLANCO Financial Services, inc., 542 F.3d 59 (3rd Cir. 2008); McDonald v. Southern Farm Bureau Life. Ins. Co., 291 F.3d 718 (11th Cir. 2002).

Plaintiffs' concede the point. Response, at pp. 3-4. While the Court of Appeals for the Fourth Circuit has yet to address the issue, it is likely that such court would follow persuasive precedent from other circuits cited above. The undersigned will, therefore, recommend this cause of action be dismissed as barred by Section 7422.

### D. Sixth and Seventh Causes of Action: Fraud and Negligent Misrepresentation

The sixth and seventh causes of action for fraud and negligent misrepresentation center on plaintiffs' allegations that defendants allowed violent teenage boys to live in the group home supervised by plaintiffs without informing plaintiffs and concealing knowledge concerning such boys' violent histories.

The essential elements of a claim of fraud by misrepresentation are: (1) a false

representation or concealment of a material fact, (2) that was reasonably calculated to deceive, (3) which was made with the intent to deceive, (4) that did in fact deceive, and (5) resulted in damage. <u>Jolly v. Acad. Collection Serv.</u>, 400 F.Supp.2d 851 (M.D.N.C. 2005). To satisfy the specificity requirements of Rule 9(b) in pleading fraud, it is plaintiffs' obligation to plead the time, place, and contents of the false representations, as well as the identity of the person making the representation and what such person obtained thereby.

On the other hand, in order to plead fraud by omission (which plaintiffs appear to be doing in this case), plaintiffs must allege the following:

> (1) the relationship or situation giving rise to the duty to speak, (2) the event or events triggering the duty to speak, and/or the general time period over which the relationship arose and the fraudulent conduct occurred, (3) the general content of the information that was withheld and the reason for its materiality, (4) the identity of those under a duty who failed to make such disclosures, (5) what those defendant(s) gained by withholding information, (6) why plaintiff's reliance on the omission was both reasonable and detrimental, and (7) the damages proximately flowing from such reliance.

<u>Breeden v. Richmond Community College</u>, 171 F.R.D. 189, 195 (M.D.N.C. 1997) (citations omitted).

From the outset, the undersigned has concern with the plausibility of a claim for fraudulent omission of the fact that boys had a history of violence where plaintiffs knowingly went to work at a boarding school for troubled teens. Plaintiffs allege from the outset that

> Wolf Creek is a boarding school for ***troubled teens*** located in Madison County, North Carolina. Wolf Creek boards the teens in "cottages" where they live with "house parents."

Compl., at ¶ 11 (emphasis added). The Supreme Court in Iqbal held that because a complaint must "state[ ] a plausible claim for relief," Rule 12(b)(6) review requires the court to employ "its judicial experience and common sense" in making such determination. Iqbal, 129 S. Ct. at 1950. While it is certainly possible that a boarding school for non-violent troubled teens may well exist, absent an affirmative representation that the school excluded children with a history of violence, it simply is not plausible for persons seeking employment as house parents at a school for "troubled teens" to reasonably believe that the "trouble" which lead such children to be taken out of their own homes and placed in such group home excluded violent behavior.

Even putting such initial implausibility aside, the Complaint lacks any allegations of the source of the duty to speak, specific dates when the omissions allegedly occurred, the identity of precisely who was obligated to tell plaintiffs that some or all of the children they were to supervise had violent histories, what defendants expected to gain by keeping such information from plaintiffs, and how plaintiffs reasonably relied on such omissions to their detriment. Indeed, the allegations of the Complaint are antithetical to their claim of concealment because they allege that they were hired in October 2008, Compl., at ¶ 38, and that "[f]ights broke out between the boys on a daily basis." Compl., at ¶ 64. Taking these allegations as true, plaintiffs clearly knew that the boys in their cottage were violent from day one, making reliance on any purported concealment implausible.

In their response, plaintiffs focus on the acts of one boy, who allegedly sent

them a threatening letter, which plaintiffs contend resulted in them leaving defendants' employment when defendants readmitted that boy to their cottage despite the written threat. Response, at pp. 4-5. While these allegations are much more specific, they suffer from the same deficiencies that the more general allegations suffer inasmuch as plaintiffs specifically alleged that they knew of this particular boy's violent tendencies before he ever sent the letter, and that they had earlier complained to defendants concerning the boy's conduct:

> The Bonhams had addressed DH's violent tendencies with the Jones family before. DH's mother told Mrs. Bonham about DH's violent tendencies. She told Mrs. Bonham that DH was violent and his counselor warned her to keep DH away from children because he had harmed small children in the past. Mrs. Bonham then confronted Mrs. Jones about DH. She told Mrs. Bonham that DH's mother told her the same thing, but that DH's mom was a "little crazy." Mrs. Jones told Mrs. Bonham that they should just keep their kids away from DH.

Compl., at ¶ 69. The allegations of the Complaint simply provide insufficient factual allegations, accepted as true, to state a claim for fraud that would be plausible on its face.

Plaintiffs' claim for negligent misrepresentation suffers from similar problems. The essential elements of a claim for negligent misrepresentation are that plaintiffs justifiably relied to their detriment on information prepared without reasonable care by a person who owed the relying party a duty of care. Hudson-Cole Dev. Corp. v. Beemer, 132 N.C.App. 341, 346 (1999). For the reasons discussed in regards to the claim of fraud, plaintiffs have failed to sufficiently allege facts that would show reasonable detrimental reliance on any misrepresentation. The lack of reasonable detrimental reliance requires dismissal of this claim.

Finally, negligent *omissions* (which appear to be what plaintiffs are claiming) as opposed to negligent misrepresentations cannot form the basis of a claim for negligent misrepresentation under North Carolina law. <u>Volumetrics Med. Imaging, Inc. V. ATL Ultrasound, Inc.</u>, 243 F.Supp.2d 86, 415 n. 13 (M.D.N.C. 2003); <u>Breeden v. Richmond Community College</u>, 171 F.R.D. at 202.

### E.  Eighth Cause of Action: Negligence

In their eighth cause of action, plaintiffs base their claim of negligence first on grounds that are precluded by federal law and then on grounds that are precluded by state law.

First, in support of their claim for negligence, plaintiffs contend that "[d]efendants had a duty to the Bonhams to correctly characterize and report the Bonhams' wages and employment status ...."  Compl, at ¶ 119.  For the reasons discussed earlier, such a common law claim for negligence is preempted by the FLSA and otherwise precluded by Section 7422 and should be dismissed.

Plaintiffs also contend that defendants were negligent because they failed to "keep a safe working environment." <u>Id.</u>  Plaintiffs fail to elaborate in such claim how the defendants made the work environment unsafe, but the court will read this claim in a light most favorable to plaintiffs and consider that such claim is based on a failure to inform them of the violent histories of the boys in their care.  While plaintiffs have generally alleged that they sustained damages, they have failed to describe the damages they actually sustained.  The essential elements of a cause of action for negligence are duty, breach of duty, proximate cause, and *damages*. <u>Camalier v.</u>

Jeffries, 340 N.C. 699, 706, 460 S.E.2d 133, 136 (1995). In order to recover, "all damages must flow directly and naturally from the wrong, and . . . they must be certain both in their nature and in respect to the cause from which they proceed." People's Center, Inc. v. Anderson, 32 N.C.App. 746, 748 (1977) (citation omitted). "[N]o recovery is allowed when resort to speculation or conjecture is necessary to determine whether the damage resulted from the unlawful act of which complaint is made or from some other source." Id., at 748-49 (citation omitted). Plaintiffs only allegation as to damages is that "[d]efendants proximately caused the Bonhams to suffer damages because of their actions alleged herein." Compl., at ¶ 121. To the extent plaintiffs are contending that they suffered physical damages based on their employers' alleged failure to keep a safe work environment, such a claim would be barred as their exclusive remedy would be under the North Carolina Workers' Compensation Act, N.C.Gen.Stat. § 97-1.

Defendants argue that any claim for emotional injury would be duplicative of a more specific cause of action, negligent infliction of emotion distress, and that it should be dismissed as duplicative. Defendants cite the court to no authority for the proposition that dismissal is an appropriate under Rule 12(b)(6) where plaintiffs allege multiple claims for the same damage. The Federal Rules of Civil Procedure specifically allow a party to plead in the alternative:

> **(2) Alternative Statements of a Claim or Defense.**
> A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.

Fed.R.Civ.P. 8(d)(2). To the extent defendants are seeking dismissal based on overlapping claims, plaintiff "is master to decide what law he will rely on ..." <u>Bell v. Hood</u>, 327 U.S. 678, 681 (1946), and pleading in the alternative is an acceptable practice.

Dismissal of plaintiffs' claim for emotional damages for failure to keep a safe work environment is, however, warranted for other another reason. Emotional damages sustained due to negligence in the workplace is subsumed by North Carolina's Workers' Compensation Act:

> Emotional injuries, as well as physical injuries, from accidents arising out of and in the course of employment, are covered under the Workers' Compensation Act. *See Jordan v. Central Piedmont Community College*, 124 N.C.App. 112, 119, 476 S.E.2d 410, 414 (1996) ("[A]s long as the resulting disability meets statutory requirements, mental, as well as physical impairments, are compensable under the Act.").

<u>Reavis v. Carlyle & Co.</u>, 2005 WL 3291253, *4 (N.C.App. Dec. 6, 2005).[4] Plaintiff's negligence claim is, in its entirety, barred as it is covered under the North Carolina Workers' Compensation Act.

The undersigned will recommend that this claim for be dismissed as it barred by federal as well as state law.

### F. Ninth Cause of Action: Piercing the Corporate Veil

The parties are in agreement that the FLSA requires no "veil piercing" to attach liability to individuals behind a corporate employer, as individuals may under certain circumstances be subjected to liability for unpaid wages under the FLSA. <u>Brock v.</u>

---

[4] Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Westlaw citation.

Hamad, 867 F.2d 804, 808 n. 6 (4th Cir. 1989). Plaintiffs only argument is that the "piercing the corporate veil claim should not be dismissed for the same reasons the NCWHA claim cannot be dismissed." Response, at p. 6. As discussed above, the NCWHA has no application in this matter as the parties agree and the court has found a basis for Wolf Creek Academy to be an enterprise under Title 29, making it subject to the FLSA. Thus, the undersigned will recommend that this claim be dismissed.

### G. Tenth and Eleventh Causes of Action: Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress

Defendants have also moved to dismiss plaintiffs' claim of intentional infliction of emotional distress. The elements of that tort are "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress." Hogan v. Forsyth Country Club, 79 N.C. App. 483, 488, disc. rev. denied, 317 N.C. 334 (1986). "It is a question of law for the court to determine, from the materials before it, whether the conduct complained of may reasonably be found to be sufficiently outrageous as to permit recovery." Id., at 490. The court has reviewed the Complaint, wherein plaintiffs allege in support of this claim as follows:

129. Plaintiff re-alleges and incorporates herein all allegations set out in paragraphs 1 through 128 above.

130. Defendants acted extremely and outrageously and beyond all possible bounds of decency by their actions alleged herein.

Compl., at ¶¶ 129-130. While plaintiffs have incorporated all allegations into this claim, the alleged mis-characterization of their employment as independent contractors, the alleged failure to pay them overtime, and the alleged improper payment of FICA taxes cannot be transformed into state-law claims as they are either

preempted under the FLSA or precluded under Section 7422. When those allegations are put aside, all that remains in support of plaintiffs' IIED are their contentions concerning concealment as to violent histories of the boys they would be supervising.

Even if the court were to consider as true the allegation that defendants concealed the fact that the boys in plaintiffs' cottage had histories of violence, such concealment does not "exceed all bounds of decency," West v. King's Dep't Store, Inc., 365 S.E.2d 621, 625 (N.C. 1988), and cannot be "'regarded as atrocious, and utterly intolerable in a civilized community.'" Wagoner v. Elkin City School Bd. of Educ., 440 S.E.2d 119, 123 (N.C. Ct. App. 1994) (citation omitted).

The initial inquiry made by North Carolina courts is whether the alleged conduct is "extreme and outrageous." This is a question of law for the court. Johnson v. Bollinger, 86 N.C. App. 1, 6 (1987). In that analysis, under North Carolina law:

> Liability has only been found where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. The liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. . . . [P]laintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind.

Briggs v. Rosenthal, 73 N.C. App. 672, 327 S.E.2d 308 (1985) (*quoting* The Restatement of Torts). Where a plaintiff's complaint fails to allege facts sufficient to set forth extreme and outrageous conduct, the IIED claim is subject to dismissal pursuant to Rule 12(b)(6). Johnson, supra, at 6.

In Hogan, wherein a defendant threatened plaintiff with bodily injury and advanced on her with a knife after she refused his sexual advances, the appellate court

found that plaintiff had stated a cause of action and that defendant's conduct was "beyond the `bounds usually tolerated by decent society.'" Hogan v. Forsyth Country Club Co., supra, at 491.

While the conduct alleged herein could be construed as counterproductive to an efficient work environment, there are no plausible allegations that could cross the line drawn by Hogan, especially where the alleged concealment is viewed in context of plaintiffs seeking and obtaining employment at a school for *troubled teens* and knowing from day one of the violent tendency of the boys they were supervising.

Similarly, plaintiffs fail to state a claim for negligent infliction of emotional distress. The essential elements of a claim for negligent infliction of emotional distress include the following: (1) defendants negligently engaged in conduct; (2) it was reasonably foreseeable that such conduct would cause the plaintiffs severe emotional distress or mental anguish; and (3) the conduct did in fact cause the plaintiffs severe emotional distress. Pardasani v. Rack Room Shoes. Inc., 912 F. Supp. 187, 192 (M.D.N.C. 1996). The only acts plaintiffs have alleged (that would not otherwise be excluded from the realm of state tort by the FLSA or Section 7422) are the same intentional acts, discussed immediately above, concerning concealment of the fact that the troubled boys they would be supervising had violent pasts. This manner of pleading negligent infliction has long been held to be insufficient:

> The district court likewise dismissed Mitchell's negligent infliction of emotional distress claim after holding that this tort requires a showing of outrageous conduct. We decline to review that holding because we believe the negligent infliction claim should have been dismissed for a more basic reason: Mitchell's complaint does not allege any negligent acts by Lydall. See Johnson v. Ruark Obstetrics & Gynecology Assocs.,

> P.A., 395 S.E.2d 85, 97 (N.C.1990) ("to state a claim for negligent infliction of emotional distress, a plaintiff must allege that (1) the defendant negligently engaged in conduct, . . ."). Mitchell's complaint contains merely a single, conclusory allegation that Lydall was negligent; the material factual allegations charge nothing but intentional acts by Lydall in failing to accommodate Mitchell's MS condition and in discharging him. Taking these material factual allegations as true and construing them in the light most favorable to Mitchell . . . we must conclude that they do not state a claim for negligent infliction of emotional distress.

Mitchell v. Lydall, Inc., 1994 WL 38703, *3 (4th Cir. 1994). A claim for *negligent* infliction of emotional distress is, therefore, subject to dismissal when "the material factual allegations charge nothing but intentional acts . . . ." Id. Inasmuch as plaintiffs rely on the allegations of intentional concealment, the undersigned will recommend that his claim for Negligent Infliction of Emotional Distress be dismissed.

## H.    Twelfth Cause of Action: Unfair and Deceptive Trade Practices.

A state-law claim for Unfair and Deceptive Trade Practices (hereinafter "UDTPA") is governed by Chapter 75-1.1(a) of the North Carolina General Statutes, which provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." Id. The UDTPA is, without doubt, a scheme regulating conduct between buyers and sellers and between businesses. See Roberson v. Dale, 464 F.Supp. 680 (M.D.N.C. 1979). See also Liggett Group, Inc. v. Sunas, 113 N.C. App. 19, 31 (1993). To state a cause of action under the UDTPA, plaintiffs must allege the following:

(1)    conduct constituting an "unfair or deceptive act or practice;"

(2)    conduct "in or affecting commerce," and

(3)    that such conduct proximately caused actual injury to plaintiff.

<u>Food Lion, Inc. v. Capital Cities/ABC Inc.</u>, 951 F.Supp. 1224, 1230 (M.D.N.C. 1996).

The UDTPA does not "extend to run-of-the mill employment disputes." <u>Dalton v. Camp</u>, 353 N.C. at 656. To be applicable to an employment relationship, plaintiffs would be required to allege "special circumstances," <u>see</u> <u>Anderson v. Sarah Lee Corp.</u>, 508 F.3d 190-191, which have not been alleged in this action. Indeed, while plaintiffs cite the court to allegations concerning the job being in commerce, such element is not here as issue: rather, the court has reviewed the Complaint for "special circumstances" that would bring this employment relationship under the umbrella of the UDTPA. Failure of an employer to tell an employee of all aspects of the job to be accomplished or the perils that might be encountered is simply not among or akin to the recognized special circumstances that would make the employment subject to the UDTPA. <u>Id.</u> If it were, the UDTPA would then be violated in a myriad of employment relationships, such as where a bank fails to inform a new teller that banks get robbed, where a telephone company fails to tell a lineman than he could be electrocuted or fall, or where an NFL team fails to tell a lineman that he could be seriously injured by contact with an opposing player. The undersigned will recommend that this claim be dismissed as employment relationships are excluded as a matter of law from coverage by the UDTPA absent pleading special circumstances which have not been herein pled.

## I. Demand for Punitive Damages

As a matter of state law, "punitive damages" is not a cause of action, but is

instead a remedy available in very limited circumstances.

> As a general rule, "[p]unitive damages do not and cannot exist as an independent cause of action, but are mere incidents of the cause of action and can never constitute a basis for it. If the injured party has no cause of action independent of a supposed right to recover punitive damages, then he has no cause of action at all." J. Stein, Damages and Recovery § 195 at 389 (1972). North Carolina follows this general rule of law.

Hawkins v. Hawkins, 101 N.C.App. 529, 532 (1991). In North Carolina,

> punitive damages may be awarded only if a claimant proves that the defendant is liable for compensatory damages and that the defendant is guilty of fraud, malice, or willful or wonton conduct.

Combs & Associates, Inc. v. Kennedy, 147 N.C.App. 362, 374 (2001) (citation omitted).

Plaintiffs have, quite properly, not labeled their demand for punitive damages as a separate cause of action, but have set it out in close proximity to the *ad damnum* clause of their Complaint. See Compl., at ¶¶ 142-144. This demand must, however, be either dismissed or stricken as all the state law claims that would have supported the demand for punitive damages are subject to dismissal. The undersigned will, therefore, recommend the dismissal or the striking of the punitive damages claim.[5]


## RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that

---

[5]     As it is not before this court at this time, such recommendation as to the demand for punitive damages, which is asserted under state law, see Compl., at ¶ 144, does not reach the issue of whether § 216(b) of the FLSA permits the recovery of punitive damages.          See *Lanza v. Sugarland Run Homeowners Ass'n, Inc.*, 97 F.Supp.2d 737 (E.D.Va. 2000) (Ellis, J.)("To allow punitive damages, which, of course, are not compensatory, but rather are designed to 'punish and deter the wrongdoer,' would therefore be inconsistent with the statute's compensatory remedial scheme." (citation omitted)).

defendants' Partial Motion to Dismiss (#12) be **ALLOWED,** that Causes of Action two through twelve be **DISMISSED**, and that the demand for punitive damages under state law be either **DISMISSED** or **STRICKEN**, all for the reasons herein stated.

### Time for Objections

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

Signed: December 29, 2010

Dennis L. Howell
United States Magistrate Judge

-24-